# Richmond.

VA. MIDLAND R. R. CO. V. BOSWELL'S ADM'R.

FEBRUARY 17th, 1887.

Absent, LEWIS, P.

1. NEGLIGENT INJURIES—*Contributory negligence—Liability.*—Compensation cannot be recovered for injuries done by defendant's mere negligence, where plaintiff, by his own ordinary negligence, contributed to cause the injury, so that but for such contribution the injury would not have happened, except where the direct cause of the injury is the defendant's omission (after becoming aware of plaintiff's negligence) to use proper care to prevent the consequence of such negligence. *Rudd's Adm'r* v. *R. & D. R. R. Co.,* 80 Va. 546.
2. IDEM—*Case at bar.*—Defendant's track-walker at night found B. lying on railroad track asleep, and aroused and warned him of approaching train. B., raising himself on his elbow and signifying his comprehension of the situation, and not appearing to be disabled by intoxication or otherwise, track-walker left him and proceeded on his beat. But B. did not leave the track, and the train passed over and killed him, without proof of negligence on the part of those controlling it—

HELD:

Defendant was not liable.

Error to judgment of circuit court of Pittsylvania county, rendered December 2, 1884, in an action of trespass on the case wherein W. J. Overby, sheriff, and as such administrator of C. B. Boswell, deceased, was plaintiff, and the Virginia Midland Railway Company was defendant. The verdict and judgment being adverse to the defendant, it obtained a writ of error and *supersedeas.*

Opinion states the case.

*Kirkpatrick & Blackford,* for the plaintiff in error.

*Ro. H. Tredway,* for the defendant in error.

HINTON, J., delivered the opinion of the court.

This is an action brought by the personal representative of C. B. Boswell against the Virginia Midland Railway Company to recover damages for the death of the said Boswell, caused, as it is alleged, by the negligence of the said company.

There was a demurrer to the declaration, which was overruled; whereupon issue was joined upon the plea of not guilty. The evidence having been fully heard, the defendant tendered a demurrer thereto, in which demurrer the plaintiff was required to join. The jury found a verdict for the plaintiff, and assessed his damages at $5,000. The court overruled the demurrer to the evidence, and it is the action of the court in overruling the demurrer to the evidence, which the defendant company assigns as error here.

It appears from the evidence that in August, 1883, the deceased, who was then a young man about twenty-one years of age, left his mother's house, which is situated near Whittle's Station on the Virginia Midland Railway, in Pittslyvania county, where he worked as a farm hand, to go to Elba or Franklin junction, another station on said road, distant about five miles, to attend a barbecue. He did not return to his home that evening, but spent the night—that is, the night of the first day of August, 1883, at the house of a friend, one J. J. McGhee, about a mile north of Elba. When he reached McGhee's he was somewhat intoxicated, but he went with McGhee to spend the evening with a friend, and returned and went to bed at McGhee's at 11 o'clock. The next day (Sunday) he attended church; after church he returned to McGhee's,

drank some cider, and then went to another friend's to dinner. In the evening he returned to McGhee's with one John Yates, on his way to Elba Station, where he expected to take the north bound train at 5 o'clock for his home. They reached Elba about ten minutes after the train had passed. Yates and he walked down the track southward about half a mile, when about sundown they parted—Yates taking a county road and Boswell continuing to walk down the track. That evening, between sundown and dark, he (Boswell) was found by a man named Brumfield at Adams' crossing, lying with his body across the track. Brumfield endeavored to awaken him, when he began to snore, and Brumfield, under the belief that he was pretending to be, but *was not asleep*, after looking around to see if he was sick or had been throwing up, left him. At 10 o'clock P. M., the track-walker, one Henry Harrison, discovered Boswell at the same place, lying on a plank between the rails. He called to him, saying, "Mister, you had better get up and get off the track; the train is coming on presently!" Whereupon he raised up and looked at Harrison and said, "Umph-ha, umph-ha," as good as to say I understand you. "That is the way I took it; I took it that he understood me, and calling to him several times, and believing that he understood me, I went ahead. He was lying on a plank between the rails, so, if the train had passed over him it would have killed him. The first time I called to him he raised up and answered; he was lying down on his side; he just raised up on his elbow and said, 'Umph-ha.' * * * * * I thought from the way he answered that he was capable of getting up, and went on; I had the balance of my beat to go over, which was about two miles, before the north bound train would pass." Boswell remained on the track, and was struck and killed, two hours afterwards, by this express train as it passed that place. There is no evidence that there was any negligence at the time of the killing.

It is argued, however, that the failure of the track-walker to signal and stop the train was the proximate cause of the injury, and negligence on the part of the company's agent for which the company is liable in damages.    After a careful consideration of the whole case, however, we have come to the opposite conclusion.    The deceased was not only a trespasser, but a trespasser who was guilty of the grossest negligence.    There is no evidence to justify the inference that he was sick; his conduct therefore in lying on the track was either the result of intoxication, as the argument of the plaintiff seems to assume that it was, or of mere recklessness.    In either event his conduct was equally culpable.

In cases of intoxication or gross recklessness, such as this was, the better opinion in this country is, that the company is not liable for anything short of a wilful and wanton injury. In *Herring* v. *Wilmington and Raleigh R. R. Co.*, 10 Ired. R. 402, where two of the plaintiff's slaves, who were allowed to go about on Sunday, became intoxicated and went upon the defendant's track and laid down and fell asleep, at a point on the road where they could have been seen by the engineer if he had been looking out for a distance variously estimated by the witnesses at from two hundred yards to a half a mile, and were killed by a passing train.    It was held by the court that their being upon the track in a condition of helpless intoxication was such contributory negligence as will prevent a recovery unless the company was guilty of wanton injury. See also *Ill. Cen. R. R. Co.* v. *Hutchenson's Adm'x*, 47 Ill. 409; Beach on Contrib. Neg. 394 N. 1, and cases cited; Id. 205, note 3.

But it is insisted on behalf of the plaintiff that an intoxicated, or even desperately reckless person, is not beyond the pale of the law, and that this case falls within the well established qualification of the general rule, which allows a plain-

tiff to recover although he has been guilty of negligence or want of ordinary care, which has contributed to cause the accident, if the defendant could by the exercise of proper care and caution, after having knowledge of the plaintiff's negligence, have avoided the mischief which happened. *Richmond and Danville R. R. Co.* v. *Anderson's Adm'r*, 31 Gratt. 815; *Dunn* v. *S. and Roanoke R. R. Co.*, 78 Va. 645; *Rudd's Adm'r*, v. *R. and D. R. R. Co.*, 80 Va. 546. The question, therefore, is narrowed down to the enquiry whether Harrison, the track-walker, was derelict in the discharge of any duty to the deceased for which the company should be held liable. Upon this point we have no difficulty in saying that, under the circumstances of this case, the track-walker did all that could be required of him. There was nothing in the conduct of Boswell which could lead Harrison to suspect that he was drunk or physically disabled. When accosted by Harrison, and told that he must get up and get off the track, that the train is coming presently, he, Boswell, got partly up, leaned on his elbow and assented to the suggestion in such a manner as to convince Harrison that he understood him; and, under these circumstances, Harrison had the right to presume that Boswell would take such measures to protect himself from danger as reasonable persons would be sure to take under such circumstances·

We think, therefore, that the judgment of the circuit court is erroneous and should be reversed, and final judgment should be rendered by this court on the demurrer to evidence in favor of the defendant.

JUDGMENT REVERSED.