# Richmond.

SAVAGE v. SOUTHERN RAILWAY CO.

January 12, 1905.

1. RAILROADS—*Adult Walking on Track—Presumption—Negligence—Case at Bar.*—A railroad track is itself a warning of danger, and a person going upon it is bound to listen and keep a lookout in each direction for approaching trains. An engineer has the right to presume that an adult on the track, in the apparent possession of all his faculties, will get off, and the company is not liable for an injury inflicted on a licensee walking on the track, unless it appears that after the servants of the company, in the exercise of ordinary care, could have discovered that he was not going to get off the track, they could have avoided the injury. In the case at bar a licensee looked and listened before going on the track, but apparently not afterwards, and after walking a very short distance was struck by a train and injured, and there is no evidence tending to show that after the discovery by the railroad company, not of his position but of his peril, it omitted to do anything in its power to avert the accident. Under these circumstances there can be no recovery.

Error to a judgment of the Circuit Court of the city of Richmond, in an action of trespass on the case, wherein the plaintiff in error was the plaintiff, and the defendant in error was the defendant.

*Affirmed.*

The opinion states the case.

*Wyndham R. Meredith,* for the plaintiff in error.

*Munford, Hunton, Williams & Anderson,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

The accident which is the subject of this suit occurred upon that portion of the main line of the Southern Railway Company between Richmond and West Point, Va., which passes through the yards of the Trigg Shipbuilding Company, in the city of Richmond. At the point of the accident the railway company was not the owner in fee of its roadbed, but occupied it, and operated its road under a perpetual license derived from the Chesapeake & Ohio Railway Company. Its right of way was over a strip of land about forty feet in width, wide enough for three tracks, but upon which only one track had been constructed. It permitted the Trigg Company to cover this space with racks and cribs, for storing iron plates, rods and other wares used in its business, leaving a space between the rail and the racks on either side of about five or six feet.

On the 13th of March, 1902, John Savage, a young colored man in the employment of the Trigg Company, was run over by a shifting engine, which was moving over this track in an easterly direction, and suffered injuries which rendered it necessary to amputate both of his legs. He brought suit, evidence was introduced before the jury, a demurrer to the evidence was interposed by the defendant, a verdict was rendered in his favor for $8,000, judgment given for the defendant, and the case is here upon a writ of error.

The only question which we shall consider is whether the evidence was sufficient to require the court to leave the case with the jury.

The testimony tended to prove the following facts: That Savage was on that day, for the first time, in the employment of the Trigg Company; that he was unacquainted with the locality, and knew nothing of the number of trains, or with respect to their operation over this line of railway; that he was

under the impression that it was a switch track and not a main line; that the material used by the Trigg shipyards in and about its business was stored in racks which occupied the right of way of the railroad to within five or five and one-half feet of the rail on either side; that at noon on the day of the accident Savage took his seat upon a platform near the railroad to eat his luncheon; that having eaten he went to a small house near the track where he had left his overalls, took a cigarette out of the pocket of his overall jacket, returned to the railroad and started down the track to the east; that before going upon the track he looked and listened but saw no train; that going upon the track in an easterly direction, he had walked but a short distance—some of his witnesses say only about eight or ten feet—when he was struck by the tender attached to an engine of the Southern Railway. A short distance west of the point at which he stepped upon the railroad track, there is a slight curve, which, together with the obstructions upon the right of way, hindered in some degree a view of the track in that direction; that an engine of the defendant company, moving with its tender in front, at a rate of about twenty miles an hour, struck him and inflicted the injuries for which he sues. There is much conflict of testimony as to whether or not the bell was rung and the whistle sounded. The negative testimony is that no warning, either by bell or whistle, was given. The positive testimony of the employees upon the train is that the bell was being rung; that it operated automatically, and the machinery for ringing the bell was set in motion when the engine started. It further appears that as many, perhaps, as 1,800 hands were employed at the Trigg shipyard, and that with the knowledge of the railroad company they were in the habit of using the railroad track through the shipyard as a passway.

Conceding that under these circumstances the defendant was guilty of negligence, it remains for us to inquire whether the plaintiff was guilty of contributory negligence.

We have said that the tracks of a railroad are of themselves a warning of danger, and that a person going upon the tracks is bound to listen and keep a lookout in each direction for approaching trains. *C. & O. Ry. Co.* v. *Rogers*, 100 Va. 324, 41 S. E. 732; *Humphreys* v. *Valley R. R. Co.*, 100 Va. 749, 42 S. E. 882.

It is difficult to get a clear cut conception of the situation at the moment when the train came into contact with Savage; but taking his own statement of the circumstances attending the accident, and it appears that he looked up and down the track before getting upon it, and then neither looked nor listened afterwards. He could not be brought to say how long he had been upon the track, nor his precise position upon the track; nor how far he had walked after getting upon the track before he was struck. He uses with respect to all these circumstances vague and indefinite terms. Some of his witnesses say that he had moved only eight or ten feet when he was struck, and that immediately upon his stepping upon the track they saw that the accident was inevitable. It may be that had the engineer applied the brakes at the moment he came in sight of Savage upon the track, the accident could have been avoided. But such was not his duty. Seeing a man upon the track in the apparent possession of all his faculties, the engineer had a right to presume that he would exercise reasonable care for his own protection. A step or two would have placed Savage in a position of safety. The duty devolved upon the engineer to stop the train only when he saw that Savage was in danger—that is to say, when he saw, or ought to have seen, that Savage was himself unconscious of his peril and would take no measures for his own protection. This proposition has been decided in numerous cases by this court.

In *N. & W. R. R. Co.* v. *Harman's Admr.*, 83 Va. 554, 8 S. E. 251, it is said that "if the person seen upon the track is an

adult, and apparently in the possession of his or her faculties, the company has a right to presume that he will exercise his senses and remove himself from his dangerous position; and if he fails to do so, and is injured, the fault is his own, and there is, in the absence of wilful negligence on its part, no remedy against the company for the results of an injury brought upon him by his own recklessness." *Tyler, Rec'r,* v. *Sites,* 90 Va. 539, 19 S. E. 174.

In *Rangeley* v. *Southern Ry. Co.,* 95 Va. 715, 30 S. E. 386, it is held that a railroad company has the right to assume that a grown person seen on its track would get out of the way of an approaching train, and the company is not liable unless it is shown that after the company, in the exercise of ordinary care, could have discovered that he was not going to get off the track, it could have avoided the injury.

In this case, Savage looked and listened before he went upon the track, and gave no further heed to the possible peril he incurred in walking upon the track; indeed, the evidence tends to show that his attention was diverted and given not to caring for his own safety, as a reasonably prudent person in his situation should have done, but was at the moment directed to some boys whom he saw playing in the vicinity. This was certainly negligence upon his part, and there is no evidence tending to show that after the discovery by the railroad company, not of his position, but of his peril, it omitted to do anything within its power to avert the accident. Under these circumstances we are bound to hold, upon the authority of the cases cited, that this unfortunate boy was the author of his own injuries.

The judgment of the Circuit Court must be affirmed.

*Affirmed.*